NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
CATHERINE L. BONOME,                 :
                                     :
            Plaintiff,               :
                                     :
      v.                             :        CIVIL ACTION NO. 05-5037 (JAP)
                                     :
UNITED STATES DEPARTMENT             :        **OPINION**
OF HOMELAND SECURITY,                :
                                     :
            Defendant                :
_____:

Presently before the Court is the Defendant United States Department of Homeland Security's (the "DHS" or "Defendant") motion for summary judgment under Federal Rule of Civil Procedure 56. Plaintiff Catherine L. Bonome ("Plaintiff") opposes Defendant's motion, and moves to amend her complaint. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Court decides this motion without oral argument as permitted by Fed. R. Civ. P. 78. For the reasons set forth below, the Court grants summary judgment in favor of the Defendant and dismisses the complaint in its entirety.

**I.     Background**

Plaintiff was a Customs Technician of the former United States Custom Service ("USCS").[1] Plaintiff commenced her employment with USCS around June 1999 and began

---

[1] On March 1, 2003, DHS became the successor federal agency to USCS when DHS absorbed the former United States Immigration and Naturalization Services.

taking time off from work for medical treatment in November 1999. On January 21, 2000, USCS granted Plaintiff six weeks, 240 hours, of advanced sick leave. Beginning on February 29, 2000, USCS allowed Plaintiff to remain in a leave without pay status because she expressed a desire to return to work at the agency.

During the period from May 2000 to May 2003, USCS provided Plaintiff with ample opportunity to return to work. Throughout this time period, numerous correspondences and conversations took place between Plaintiff and the agency concerning issues such as when she could return to work and medical documentation regarding her ability to work. In response to a letter dated June 27, 2002, from the USCS Area Director in Newark, New Jersey, Plaintiff indicated that she would return to work at the end of August 2002.

Plaintiff, however, did not report for work in August 2002 or any time thereafter. By letter dated May 1, 2003, the Director, Field Operation, New York for USCS proposed that Plaintiff be removed from her position at the agency due to her ongoing unavailability. Plaintiff replied by letter dated May 12, 2003, asking for a time extension to make her reply, which the agency granted. Between June 2003 and August 2003, Plaintiff and the agency communicated about her employment status. By letter dated August 26, 2003, USCS indicated to Plaintiff that she was approved to return to work and to report to the office on September 8, 2003.

Plaintiff did not return to work on September 8, 2003, and communicated to the agency that she suffered additional health complications. USCS attempted to contact Plaintiff, but its messages were not returned. By letter dated October 15, 2003, which Plaintiff signed for on October 17, 2003, the agency advised Plaintiff that she was terminated from her employment effective October 20, 2003. The removal letter notified Plaintiff that she had the right to contest

her removal through one of three administrative avenues: 1) union arbitration; 2) an appeal to the Merit Systems Protection Board; or, 3) pre-complaint counseling with the agency's Equal Employment Opportunity officer.  Plaintiff did not contest her termination.  The effective date of Plaintiff's employment terminated on October 20, 2003, and Plaintiff was officially removed from the agency's payroll on March 26, 2004.

After receiving the October 15, 2003 letter from USCS, Plaintiff continued to seek medical treatment for her health conditions and fill prescriptions.  On April 15, 2004, Plaintiff learned from her pharmacy that her prescription bills were not being paid and that she was responsible for the costs of all her doctor's visits and prescriptions dating back to October 2003.

Plaintiff filed a complaint against the Defendant with the Court on October 19, 2005. The First Count of Plaintiff's complaint was merely a recitation of the facts applicable to Plaintiff's causes of action.  The Second Count alleged that the Defendant's termination of Plaintiff violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* ("ADA"). The Third Count alleged that by terminating Plaintiff's health insurance without prior notice to Plaintiff, the Defendant violated her rights under federal COBRA law.

The Defendant moved for summary judgment and its motion correctly noted that the ADA does not provide Plaintiff with a basis for bringing an action against the United States or one of its agencies; thus, Plaintiff's complaint must be dismissed on those grounds.  To the extent Plaintiff sought to sue DHS for discrimination based on her disability, Plaintiff should have pursued that action under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act").  Plaintiff conceded that she is not permitted to bring suit against the Defendant under the ADA and now seeks leave to amend her complaint to properly plead her cause of action to one

under the Rehabilitation Act.

## II. Standard of Review

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine

issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Under Rule 15 of the Federal Rules of Civil Procedure a party may amend "the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). If a responsive pleading has already been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party" and leave to amend the complaint "shall be given freely when justice so requires." *Id.*

### III.   Legal Discussion

    a.   <u>Defendant's Motion for Summary Judgement</u>

The Court finds that summary judgment must be granted in favor of the Defendant dismissing Plaintiff's complaint in its entirety. From the outset, Plaintiff's Complaint alleging a discriminatory discharge in violation of the ADA should be dismissed because it is improper and cannot survive. "A suit against a federal agency...constitutes a suit against the United States, and is not permitted under the ADA." *Whaley v. United States*, 82 F. Supp.2d 1060, 1061 (D. Neb. 2000).

As DHS correctly noted, to the extent Plaintiff sought to bring an action for discrimination based on her disability against the agency, Plaintiff should have pled a cause of action under the Rehabilitation Act, which does provide redress for discriminatory discharge. Even if Plaintiff had initially brought her cause of action properly under the Rehabilitation Act, however, the Defendant's motion for summary judgment would be granted because Plaintiff failed to exhaust her administrative remedies.

the

The purpose of the Rehabilitation Act is to "empower individuals with disabilities to maximize employment...through...the guarantee of equal opportunity." 29 U.S.C. § 701(b)(1)(F). Section 794(a) of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20), shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794.

Under the Rehabilitation Act, a federal employee may sue the United States or one of its agencies for discrimination based on disability. *See* 29 U.S.C. § 794a. A litigant, however, must exhaust administrative remedies under Title VII before filing suit against a federal agency alleging discrimination on the basis of handicap when seeking relief under the Rehabilitation Act. *Spence v. Straw*, 54 F.3d 196, 199-200 (3d Cir. 1995) (explaining the statutory enforcement scheme established by the Rehabilitation Act). Filing a charge with the Equal Employment Opportunities Commission ("EEOC") is a jurisdictional requirement before commencing an action in federal court. *See Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1210 (3d. Cir. 1984) ("A plaintiff under Title VII must file a timely charge with the EEOC before initiating suit in federal court.").

Pursuant to the regulations set forth in 29 C.F.R. § 1614.105(a)(1), the EEOC requires an aggrieved party to seek counseling with an EEOC official within forty-five days of the alleged discriminatory incident. 29 C.F.R. § 1614.105(a)(1). If counseling does not resolve the matter, the aggrieved party may file a formal administrative complaint. 29 C.F.R. § 1614.106(a). Should the matter remain unresolved, only then can the aggrieved party file a civil suit in federal

court in compliance with the timeliness requirements set forth in 29 C.F.R. § 1614.107.  In certain instances, the administrative exhaustion requirement may be waived or tolled for equitable reasons.  29 C.F.R. § 1614.604(c).  Tolling is appropriate when the defendant has actively misled the plaintiff with respect to plaintiff's cause of action, the plaintiff has been prevented from asserting her rights in some unusual way, or plaintiff timely filed her action, but in the wrong forum.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (discussing three principal, thought not exclusive, situations where tolling is appropriate).

      Plaintiff failed to exhaust her administrative remedies.  The October 15, 2003 termination letter that the Defendant sent Plaintiff, and which Plaintiff signed for, clearly stated her options for administrative remedies.  In relevant part, the letter stated, "You have the right to contest this action through one of the avenues outlined below."  Mitchell Declaration, Def. Ex. L.  Although Plaintiff stated that she sent a letter challenging her termination, merely replying to the Defendant did not invoke an administrative remedy.  Plaintiff further claims that because of her health conditions, she was unable to get to the EEOC office to file her complaint; however, one of three administrative remedies available to her was to file an appeal by *mail, fax, or personal delivery* to the Merit Systems Protection Board ("MSPB").  Mitchell Declaration, Def. Ex. L (emphasis added).  Additionally, Plaintiff could have called the EEOC office to schedule an appointment with a counselor if she was not feeling healthy enough to visit the office.  Plaintiff physically did not need to go to either the MSPB or EEOC office in order to initiate the administrative remedies procedure.

      Plaintiff also argues that she was never officially notified of her termination.  The October 15, 2003 letter, however, unambiguously stated "it is my [Patricia Duffy, Executive

Director, Operations] decision that your termination is warranted...your removal will become effective on October 20, 2003." Mitchell Declaration, Def. Ex. L. Plaintiff's letter challenging her termination did not require a response from the Defendant because it was not an appropriate avenue of administrative remedy. Therefore, the Defendant was under no obligation to provide Plaintiff with further notice of her termination. The October 15 letter was the Defendant's final position on the status of Plaintiff's employment at the agency.

Further, the exhaustion requirement should neither be waived nor tolled for equitable reasons. The Defendant did nothing to constitute a waiver of Plaintiff's need to exhaust administrative remedies. Regarding tolling, Plaintiff was clearly aware of her termination in October 2003 and no one misled her concerning her right to seek administrative remedies under the Rehabilitation Act. Plaintiff was not prevented from seeking administrative remedies nor did she mistakenly file for redress in the wrong forum.

Although the Court recognizes that Plaintiff suffers from some serious medical conditions, it is hard to accept that Plaintiff is well enough to claim that she could return to work, but not well enough to follow the appropriate administrative remedy.

  b. <u>Plaintiff's Request for Leave to Amend Complaint</u>

Although leave to amend should be "freely give,"a district court may deny a motion to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice the other party. *See, e.g., Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

In Plaintiff's reply to the Defendant's summary judgment motion, Plaintiff sought leave

to amend her complaint in order to change her cause of action for discrimination under the ADA to one under the Rehabilitation Act. Plaintiff also sought to add the Office of Personnel Management ("OPM") as a party for failing to notify Plaintiff of her termination of health benefits.

Granting Plaintiff leave to amend her complaint would be futile. It has already been established that Plaintiff failed to exhaust her administrative remedies as required by the Rehabilitation Act; therefore, even if this Court allowed Plaintiff to change her cause of action from discrimination under the ADA to the Rehabilitation Act, she still would be unable to bring suit in this Court. Further, because Plaintiff did not exhaust her administrative remedies and, thus, is precluded from seeking redress in this Court, it would also be futile to allow her to add another party to her complaint.

### IV.  Conclusion

Thus, for the foregoing reasons, the Court grants the Defendant's motion for summary judgment dismissing Plaintiff's complaint in its entirety. The Court also denies Plaintiff's request for leave to amend her complaint. This matter is hereby closed. An appropriate order accompanies this opinion.

Date: September 27, 2007              /s/ JOEL A. PISANO
                                      United States District Judge

Original:   Clerk
cc:         Judge Bongiovanni
            All Parties
            File